IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. MIRANDA KNIGHT-BROWN | ) | |
| an individual, | ) | |
| 2. JUSTIN LEN BROWN, | ) | |
| an individual | ) | JUDGE: 19-CV-93-KEW |
| Plaintiffs, | ) | CASE NO.: |
| vs. | ) | |
| 1. UNITED STATES OF AMERICA | ) | |
| 2. UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES | ) | |
| 3. CHOCTAW NATION HEALTHCARE SERVICES AUTHORITY, | ) | |
| 4. JASON HILL, an individual | ) | |
| 5. WILLIAM HAYES, an individual | ) | |
| 6. JOHN DOES 1-30, unknown individuals of the Choctaw Nation Healthcare Services Authority, | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiffs, Miranda Knight-Brown, M.D. ("Dr. Knight") and Justin Len Brown ("Mr. Brown"), and submits their Complaint asserting their causes of action against the Defendants.

### PARTIES, JURISDICTION & VENUE

1. Dr. Knight is a resident of Anchorage, Anchorage Borough, State of Alaska.

2. Mr. Brown is a resident of Anchorage, Anchorage Borough, State of Alaska.

1

3. The Defendant Choctaw Nation Health Services Authority ("CNHSA") is a health care organization that is, and hold itself out as, a contractor for purposes of the Federal Tort Claims Act, its employees such as the individually-named Defendants and others to be revealed over the course of discovery, are considered employees of the federal government. *See*, 25 C.F.R. §900.186(a).

4. Upon information and belief, Defendant Jason Hill ("Dr. Hill") is a resident of Talihina, LeFlore County, State of Oklahoma. Dr. Hill is the chief medical officer at CNHSA.

5. Upon information and belief, Defendant William Hayes ("Dr. Hayes") is a resident of Fort Smith, Arkansas. Dr. Hayes is the chief of staff at CNHSA.

6. Upon information and belief, John Does 1-30 are employees of CNHSA and reside in or around LeFlore County, State of Oklahoma.

7. The jurisdictional basis for this Court to determine this cause of action is pursuant to 28 U.S.C. § 1331 as this cause of action arises under federal law, and 28 U.S.C. §1346, as the Defendant is the United States of America; Federal Tort Claims Act, 28 U.S.C. §; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court likewise has supplemental jurisdiction over Plaintiffs' tort claims pursuant to 28 U.S.C. § 1367.

8. Venue is properly laid in the Eastern District of Oklahoma pursuant to 28 U.S.C. § 1391(b) as the incidents giving rise to this action occurred in LeFlore County, State of Oklahoma.

9. Pursuant to the Federal Tort Claims Act, 28 U.S.C §1346(B), the undersigned served a "Form 95" notice of claim for damages, injury or death to United States Department of health and human services, Indian Health Services, the United States Department of Health and Human Services acknowledge receipt of Plaintiffs Form 95 on December 3, 2018 and denied the

Plaintiffs' claim on January 4, 2019. Please see attached **Exhibit 1**, Notice of Claim, and **Exhibit 2**, Department of Health and Human Services Letter stamped January 3, 2019 The Plaintiffs have exhausted their administrative remedies.

10. Pursuant to the Federal Tort Claims Act, the United States of America is liable in tort for the acts and omissions of its employees who provided services at CNHSA.

## Operative Facts

11. Dr. Knight graduated magna cum laude from Northeastern State University in Tahlequah, Oklahoma, and thereafter graduated from the University of Minnesota Medical School (Duluth).

12. Dr. Knight is an obstetrics and gynecology physician licensed in both Oklahoma and Alaska and has been so since 2012. She completed residency and became board eligible in August 2016.

13. Dr. Knight began her employment at the Choctaw Nation Healthcare Center, in Talihina, Oklahoma, part of the CNHSA, as an OB/GYN employee physician in August 2016. Throughout the entirety of her employment period, up until the weeks leading to her termination, her employment was without incident and she had no disciplinary action taken against her.

14. Dr. Knight received numerous compliments on the medical care she provided, and she had no cause to believe that her employment was ever in jeopardy.

15. On April 28, 2017 Dr. Knight performed an unscheduled, emergent gynecological surgery (hysterectomy) with a certified registered nurse anesthetist Dale Baughman ("CRNA Baughman") assisting by administering anesthesia.

16. It is understood in the medical/surgical profession that the surgeon performing the surgical procedure is "in charge" of the patient care and such would never be delegated to an anesthesia nurse.

17. During this serious surgical procedure, CRNA Baughman actively interfered with and gravely compromised the patient's safety by either ignoring or challenging Dr. Knight's unequivocal orders to him. This included, without limitation, CRNA Baughman's refusal to communicate vital information about the subject patient's decompensation that could have led to the patient's injury or death.

18. CRNA Baughman had a lengthy history of behaving in a dangerous and reckless manner while administering anesthesia.

19. On May 2, 2017, Dr. Knight was performing a scheduled minor surgical procedure again assisted by CRNA Baughman. During this surgery CRNA Baughman yelled and bullied Dr. Knight, shouted profanities at her, and physically intimidated her. Dr. Knight was fearful he would physically injure her or perhaps others that were present in or around the surgical suite.

20. Dr. Knight reported the multiple occasions of CRNA Baughman's harassment and threats to the chief medical officer Dr. Jason Hill pursuant to CNHSA policy and the policies, customs, and practices of the health care field.

21. In response to the previous paragraph, Dr. Hill informed Dr. Knight that the following day she would be required to present the aforementioned April 28, 2017 hysterectomy case at a Morbidity and Mortality Conference ("M&M Conference").

22. Generally speaking a M&M Conference is an in-house panel teaching tool attended by several CNHSA medical professionals who discuss cases in order to learn and problem-solve.

It is not a disciplinary panel, nor was it ever suggested the subject M&M Conference could become such.

23.     On May 8, 2017, an M&M Conference was held at the order of Dr. Hill consistent with the foregoing paragraph. Those in attendance included the following: Dr. Knight, Dr. Hill, Dr. Hayes, Chief of Staff, and Dr. Dee Baughman, emergency room physician and brother of CRNA Baughman.

24.     During this M&M Conference, Dr. Knight had only presented a small part of the medical case to the attendees before being interrupted and ordered to leave the room.

25.     The M&M Conference panel requested CRNA Baughman to enter and speak outside of Dr. Knight's presence. After approximately one hour, CRNA Baughman was released from the M&M Conference, and shortly thereafter the remaining attendees were also released with the exception of Dr. Hill, Dr. Hayes and Dr. Knight's supervisor.

26.     Dr. Knight was instructed to return and appear before the remaining M&M Conference panelists and was told she could either immediately resign, or, if refused, would be terminated in two weeks and reported by CNHSA to the National Practitioners' Data Bank.

27.     Dr. Knight was further told she had to decide at that moment or else Drs. Hill and Hayes would summarily terminate her employment and reported to the National Practitioners' Data Bank.

28.     Dr. Hill forced Dr. Knight to sign a statement setting forth her "voluntary" resignation. Dr. Hill to this day refused to provide Dr. Knight a copy of this statement despite numerous requests.

29. Remarkably, subsequent to the M&M Conference, Dr. Knight learned that the panelists determined she had appropriately managed the patient and that the surgical hysterectomy was medically necessary and an accepted possible outcome of any delivery.

30. Dr. Hill and Dr. Hayes have a lengthy history of using the legitimate M&M Conference process to intimidate, threaten, and professionally damage female physicians employed at CNHSA.

31. Despite having her employment terminated, Dr. Knight returned the work the following day to care for her patients and assist with continuity of care. The Defendants had already deleted her patient work accounts and work email.

32. After Dr. Knight was terminated, the Defendants prevented her from accessing its employment policies and procedures and deprived her of information that would assist with protecting or exercising her civil and due process rights.

33. Dr. Hill told Dr. Knight she did not "qualify" for any due process since she was never investigated.

34. The Defendants prepared a document which stated that Dr. Knight's "resignation followed an investigation into a complicated surgical case."

35. The Plaintiffs were forced out of their home they had been renting from the Choctaw Nation as a result of the termination, and the Defendants knew when they terminated Dr. Knight that her family would be forced to relocate.

36. Dr. Knight made contractual financial commitments while she was in medical school to work in certain locations similar to the CNHSA. These commitments limited her ability to find like or similar employment, which was known to the Defendants.

37. Because of the timing of her firing, Dr. Knight was unable to sit for oral medical board exams that she had already paid for and gathered information in preparation. The Defendants were aware of this.

38. Dr. Knight had grave difficulty finding another job, getting privileges at prospective hospitals, or even obtaining another state medical license since she had to explain why she had been terminated from CNHSA.

39. The only place Dr. Knight was able to find work was in Anchorage, Alaska at the Alaska Native Medical Center. During the hiring process she was forced into the administration's offices and questioned by the Alaskan State Medical Board because of what happened at CNHSA.

40. Dr. Knight suffered severe emotional distress, humiliation, and embarrassment at the hands of the Defendants.

41. The Plaintiffs suffered severe financial hardship.

42. Mr. Brown resigned his employment as a police officer to care for their small child just months before the Defendants illegally terminated Dr. Knight's employment.

### FIRST CAUSE OF ACTION
### NEGLIGENCE AND NEGLIGENCE PER SE
### DR. KNIGHT VS. USA

For the First Cause of Action against the Defendant USA, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

43. The USA owed common law and statutory duties to protect persons such as Dr. Knight from tortious acts committed by its employees or officers, including without limitation: the unlawful and unconstitutional deprivations of her due process and equal protection rights; the discriminatory treatment based on her gender, female; the threats of baseless and slanderous reporting of Dr. Knight to the National Data Bank if she refused to voluntarily resign; retaliatory

and malicious prosecution of Dr. Knight for reporting a threatening and dangerous health care worker, CRNA Baughman; the negligent and intentional refusal to provide Dr. Knight her constitutional and contractual rights to due process before termination of employment; and CNHSA misuse of the M&M Conference process and failing to keep confidential the subject matter and results of the same.

44. The USA is vicariously responsible for the tortious acts of Drs. Hill and Hayes, and John Does 1-30 against Dr. Knight.

45. The USA had a common law and statutory duty to train, supervise, monitor and discipline CNHCA officers and employees such as Drs. Hill and Hayes, Dee Baughman, CRNA Baughman, and John Does 1-30, including termination, once it became known of the obvious signs of their misconduct.

46. The USA breached the aforementioned duties they owed to persons such as Dr. Knight, and other common law and statutory duties owed to her which will be revealed during discovery.

47. Dr. Knight suffered damages as a direct and proximate result of the duties breached by the USA, which include severe emotional distress, loss of income, degradation/humiliation, pain and suffering, mental pain and suffering, and impairment of earning capacity.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown prays the Court for Judgment against the Defendant United States of America, and award her damages in the amount of ten million dollars ($10,000,000.00), together with interest, cost of the action, and for any and all other relief this court deems just and proper.

**SECOND CAUSE OF ACTION**
**PREMISES LIABILITY**
**DR. KNIGHT VS. USA**

For the Second Cause of Action against the Defendant United States of America, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

48. The USA managed and operated the subject CHCSA in Talihina, Oklahoma.

49. The USA owe a duty of ordinary care to keep its premises in a reasonably safe condition for use of its employees such as Dr. Knight and her coworkers. The USA owed a duty to Dr. Knight or any other employee at CHCSA to be safe from bullying, threatening, and intimidating employees such as CRNA Baughman.

50. The USA had actual or constructive knowledge of the danger that CRNA Baughman presented at the CHCSA.

51. The USA failed to remove CRNA Baughman and failed or refused to warn Dr. Knight and her coworkers of the danger CRNA Baughman presented at the CHCSA.

52. As a direct and proximate cause of the foregoing failures and those anticipated to be revealed during discovery, Dr. Knight was injured. This included severe emotional distress, loss of income, degradation/humiliation, pain and suffering, mental pain and suffering, and impairment of earning capacity.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown prays the Court for Judgment against the Defendant United States of America and award her damages in the amount of ten million dollars ($10,000,000.00), together with interest, cost of the action, and for any and all other relief this court deems just and proper.

**THIRD CAUSE OF ACTION**
**WRONGFUL TERMINATION—PUBLIC POLICY/WHISTLEBLOWER VIOLATION**
**DR. KNIGHT VS. USA**

For the Third Cause of Action against the Defendant United States of America, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

53. Dr. Knight was a contractual employee and had a property interest in her job as set forth in her contract.

54. Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge. See, *Barker v. State Ins. Fund*, 2001 OK 94, 40 P.3d 463.

55. Dr. Knight brought her observations and concerns about CRNA Baughman to the attention of the Defendants, Dr. Hill and Hayes, and John Does 1-30. This included his unprofessional and bullying behavior during surgery, his refusal to perform the essential functions of his job by timely reporting changes in the patient's condition, and his refusal to follow instructions from Dr. Knight, his superior.

56. Oklahoma has a strong interest in preventing injuries and death of patients by health care providers such as CRNA Baughman.

57. Dr. Knight was discriminated against as to the terms and conditions of her employment because she reported CRNA Baughman's misconduct.

58. The actions and omissions by the USA violate Oklahoma public policy and Oklahoma statutory law including reporting known or threatened dangers to patients by healthcare workers. This further includes without limitation: OAC 310:667-3-1, *General*, "Patients have a right to considerate and respectful care from all personnel involved."; OAC 310:667-11-2., *Quality improvement plan*; 310:667-3-3. *Medical therapies*; 310:667-11-1. *General*.

59. Dr. Knight reasonably believed that the CRNA Baughman's misconduct and abusive behavior she was reporting was in violation of clearly articulated Oklahoma public policy.

60. Dr. Knight attempted to comply with all administrative procedures to report and correct the wrongful actions of the Defendants prior to her wrongful termination.

61. Dr. Knight was retaliated against, bullied, threatened, and eventually terminated less than thirty days after she first reported CRNA Baughman's misconduct and abuse. Her termination was not for cause; it was based on pretext of an allegation that she "worked too slow". However, the USA was fully aware of the circumstances of Dr. Knight's employment, her difficulties with CRNA Baughman, and the dangers CRNA Baughman posed to herself, CNHSA surgical staff, and CNHSA's patients.

62. On November 1, 2011, 25 O.S. §1350 went into effect creating a statutory remedy for employment-based discrimination.

63. The Defendants' termination of Dr. Knight's employment constitutes a wrongful termination under *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24, *Vasek v. Board of County Com'rs of Noble County*, 2008 OK 35, 186 P.3d 928.

64. Dr. Knight is entitled to recover from Defendants all actual and compensatory damages, including, but not limited to, damages for loss of wages and income, back pay, front pay, embarrassment/humiliation, loss of dignity, loss of enjoyment of life, worry, stress, intentional infliction of emotional distress, and anxiety resulting from her wrongful discharge.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown prays the Court for Judgment against the Defendant United States of America and award her damages in the amount of ten million dollars ($10,000,000.00), for back pay, front pay, compensatory damages,

together with interest, costs of the action, and for any and all other relief this court deems just and proper.

## FOURTH CAUSE OF ACTION
### WRONGFUL TERMINATION—PUBLIC POLICY VIOLATION/GENDER DISCRIMINATION
### DR. KNIGHT VS. USA

For the Fourth Cause of Action against the Defendant United States of America, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

65. The Defendants terminated Dr. Knight almost one month after she complained to CMHSA of CRNA Baughman's workplace misconduct and abuse.

66. As a separate common law tort cause of action, Dr. Knight alleges and states that a significant and motivating factor in the actions of Defendants in terminating her employment was because of her gender, female, and that the Defendants have a lengthy history of treating female employees less favorably than male employees.

67. Oklahoma has a clear and compelling public policy of protecting employees from discrimination in employment on the basis of gender, female.

68. Defendants' acts of discrimination and eventually terminating Dr. Knight's employment was based in whole or in part upon her gender, female, and such was in violation of Oklahoma and Federal statutes and continues to be in violation of said clear and compelling public policy as evidenced by statutory law, including 25 O.S.§§ 1101 *et seq.*, and numerous Oklahoma Supreme Court decisions. *See*, *e.g.*, S*aint v. Data Exchange, Inc.*, 2006 OK 59, 145 P.3d 1037; *Kruchowski v. Weyerhaeuser Co.*, 2008 OK 105, 202 P.3d 144; and *Shirazi v. Childtime Learning Center, Inc.*, 2009 OK 13, 204 P.3d 75.

69.     Dr. Knight does not have an adequate remedy for gender-based discrimination under federal law, including Title VII, as CMHSA is an Indian tribe and therefore not considered an "employer".

70.     Dr. Knight is entitled to recover from Defendants all actual and compensatory damages, including, but not limited to, damages for loss of wages and income, back pay, front pay, embarrassment/humiliation, loss of dignity, loss of enjoyment of life, worry, stress, intentional infliction of emotional distress, and anxiety resulting from her wrongful discharge.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown prays the Court for Judgment against the Defendant United States of America and award her damages in the amount of ten million dollars ($10,000,000.00) for back pay, front pay, compensatory damages, together with interest, costs of the action, and for any and all other relief this court deems just and proper.

**FIFTH CAUSE OF ACTION**
***BIVENS* ACTION**
**DR. KNIGHT VS. DEFENDANTS DR. HILL, DR. HAYES, AND JOHN DOES 1-30**

For the Fifth Cause of Action against Defendants Dr. Hill, Dr. Hayes, and John Does 1-30, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

71.     Dr. Knight had a vested, legally cognizable property right in her continued employment by CMHSA via her employment agreement entitling her to both procedural and substantive due process rights before her employment could be terminated.

72.     Dr. Knight had a legitimate and sufficient expectation she would receive both procedural and substantive due process, including hearing, before her employment could be terminated.

73. Defendant Dr. Hill, Dr. Hayes, and John Does 1-30 as federal officials employed by the CMHSA, acting under color of statute, regulation, custom or law, by fabricating alleged misconduct and inadequate medical care by Dr. Knight; falsely and publicly accusing her of providing inadequate medical care, threatening and extorting her into voluntarily resigning her employment; maliciously misusing the M&M Conference process to fraudulently induce Dr. Knight into believing her complaints about CRNA Baughman were being considered; all which caused Dr. Knight to be subjected to the deprivation of her rights, privileges, and immunities secured by the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States and its laws.

74. Defendant Dr. Hill, Dr. Hayes, and John Does 1-30 personally participated in the violations of Dr. Knight's constitutional rights.

75. Defendant Dr. Hill's, Dr. Hayes's, and John Does 1-30's actions were reckless, knowing, intentional, malicious and/or wanton violation of Dr. Knight's rights under the Fifth Amendment to not be deprived of life, liberty, or property without due process, as well as the Fourteenth Amendment, and renders her liable in an action at law or other proceeding for redress of the injuries sustained.

76. Dr. Knight is entitled to relief from Defendant Dr. Hill, Dr. Hayes, and John Does 1-30 under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

77. Dr. Knight is entitled to damages from Defendant Dr. Hill, Dr. Hayes, and John Does 1-30 for loss of wages and income, back pay, front pay, embarrassment/humiliation, loss of dignity, loss of enjoyment of life, worry, stress, intentional infliction of emotional distress, and

anxiety resulting from her wrongful discharge. Dr. Knight is further entitled to an award of punitive damages.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown prays the Court for Judgment against Defendant Drs. Hill, Hayes, and John Does 1-30 and award her compensatory damages in excess of five million dollars ($5,000,000.00), punitive damages in excess of five million dollars ($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, costs of the action, and any other relief deemed just and equitable.

### SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### DR. KNIGHT VS. DEFENDANTS

For the Sixth Cause of Action against the Defendants, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

78.    The Defendants' actions and conduct were intentional and reckless, and the same was of an extreme and outrageous nature. Furthermore, such actions and conduct were so extreme and outrageous as it went beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

79.    Dr. Knight suffered and experienced actual emotional distress because of the Defendants' actions, and said distress was severe.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown respectfully requests this Court enter Judgment against the Defendants award her actual damages in excess of $10,000,000; costs and expenses, punitive damages against Drs. Hill and Hayes, prejudgment and post judgment interest, attorney fees incurred, and any other relief deemed just and equitable.

### SEVENTH CAUSE OF ACTION
### BREACH OF CONTRACT

## Dr. Knight vs. USA

For the Seventh Cause of Action against the Defendant United States of America, Dr. Knight adopts and re-alleges all of her allegations above as if fully set forth herein; and she further alleges and states:

80. Dr. Knight entered into a contract to perform OB/GYN medical and surgical services with the USA. Pursuant to the terms of the contract, the parties agreed Dr. Knight was to receive $335,000.00 annual salary, continuing medical education expenses, and other employment-related benefits. The contract also set forth the grounds for termination of employment, none of which were present at the time Dr. Knight's employment was terminated.

81. Numerous other documents prepared by the USA set forth additional contractual duties between itself and Dr. Knight.

82. Dr, Knight performed fully and competently all contractual duties and responsibilities set forth in the contract.

83. The USA breached its contract with Dr. Knight on the grounds stated above and throughout, and other grounds which will be revealed over the course of discovery.

84. Dr. Knight was therefore damaged as a result of the USA's breach of contract, she is entitled to receive the benefit of the bargain between herself and USA, and is entitled to all other contractual rights and benefits to which the parties had agreed and which she was deprived.

85. The services Dr. Knight provided the USA are those contemplated by 12 O.S. §936; therefore, Dr. Knight is entitled to recover her incurred attorneys' fees and costs.

**WHEREFORE**, premises considered, the Plaintiff Dr. Miranda Knight-Brown prays the Court for Judgment against the Defendant United States of America and award her compensatory

damages in excess of one million dollars ($1,000,000.00); prejudgment and post judgment interest, attorneys' fees incurred, costs of the action, and any other relief deemed just and equitable.

### EIGHTH CAUSE OF ACTION
### LOSS OF CONSORTIUM
### MR. BROWN VS. DEFENDANTS

For the Eighth Cause of Action against the Defendants, Mr. Brown adopts and re-alleges all of the allegations above as if fully set forth herein; and further alleges and states:

86. That at the time of this wrongful termination and other common law causes of action and the resulting injuries to Dr. Knight, she and Mr. Brown were lawfully married. As a result of the injuries to Dr. Knight, Mr. Brown has suffered a loss of services, society, consortium and companionship.

**WHEREFORE**, premises considered, the Plaintiff Justin Len Brown prays the Court for Judgment against the Defendants, and award him compensatory damages in excess of one million dollars ($1,000,000.00); punitive damages in excess of one million dollars ($1,000,000.00) against Dr. Hill, Dr. Hayes, and John Does 1-30; prejudgment and post judgment interest, attorneys' fees incurred, costs of the action, and any other relief deemed just and equitable.

Respectfully submitted,

/s/A.Laurie Koller
A. Laurie Koller, OBA #16857
KOLLER TRIAL LAW, PLLC
320 South Boston, Suite 1130
Tulsa, Oklahoma 74103
laurie@kollertriallaw.com
(918) 216-9596
(918) 248-8238 Fax

-and-

Tony Mareshie, OBA#18180
E. ANTHONY MARESHIE, P.L.L.C.

P.O. Box 330161
Tulsa, Oklahoma 74133-0161
tulsalegal@gmail.com
Telephone:	(918) 519-3771
Facsimile:	(918) 970-6927
*Counsel for Plaintiffs*

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**